```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF CALIFORNIA
 2

 3    Manisha Palla,
              Plaintiff,
 4
      vs.                               Sacramento, California
 5                                      No. 2:16-cv-02865
      LM Sports, Inc., Doing            Tue., Jul. 30, 2019
 6    business as Lakeside              1:27 p.m.
      Marina, doing business as
 7    Action Watersports of
      Tahoe, et al.,
 8            Defendants.
      _____/
 9
                          TRANSCRIPT OF HEARING
10         BEFORE THE HONORABLE JOHN A. MENDEZ, DISTRICT JUDGE
                             ---oOo---
11

12    APPEARANCES:

13     For the Plaintiff:            Dreyer, Babich, Buccola,
                                     Wood, Campora, LLP
14                                   20 Bicentennial Circle
                                     Sacramento, CA  95826
15                                   By:  Roger A. Dreyer
                                     Attorney at Law
16

17     For the Defendants:          Hinshaw & Culbertson, LLP
                                     One California Street
18                                   18th Floor
                                     San Francisco, CA  94111
19                                   By: Pamela Lynn Schultz
                                     Attorney at Law
20

21     Official Court Reporter:     Kimberly M. Bennett,
                                     CSR, RPR, RMR, CRR
22                                   501 I Street
                                     Sacramento, CA 95814
23

24     Proceedings recorded by mechanical stenography, transcript
       produced by computer-aided transcription
25
```

1            (Call to order of the court, 1:27 p.m.)

2                 THE CLERK:  Calling civil case 16-2865; Palla versus

3      LM Sports, Inc., et al.

4                 THE COURT:  Appearances.

5                 MS. SCHULTZ:  Your Honor, movant, Pamela Schultz,

6      Hinshaw Culbertson, for LM sports, Inc.

7                 MR. DREYER:  Roger Dreyer on behalf of Ms. Palla,

8      Your Honor.

9                 THE COURT:  Welcome back.

10                MR. DREYER:  Thank you.

11                THE COURT:  Both of you.

12        All right.  We're on calendar this afternoon on a motion to

13     stay.  LM Sports has filed an interlocutory appeal to the Ninth

14     Circuit of the court's ruling on the liability phase of the

15     trial, and is now asking the Court to stay proceedings pending

16     the resolution of that interlocutory appeal.

17        I don't have a lot of questions.  Let me make some initial

18     comments, and then just have you address one or two things.

19          There is, really, two primary arguments the way I've broken

20     this up that LM Sports has raised as to why it believes the

21     Court should grant a stay.  Both sides agree that the

22     interlocutory appeal does not divest the Court of jurisdiction

23     to proceed with the damages trial, and that it's a

24     discretionary call, taking into account a number of factors

25     that I'll go over.

1   LM does make the argument that the Court's otherwise

2   discretionary authority to manage its own docket becomes

3   irrelevant if the Court lacks the authority to hear the damages

4   trial until the Ninth Circuit resolves the pending appeal.

5       LM Sports' opening brief argues that an interlocutory

6   appeal divests the district court of jurisdiction over issues

7   that are embraced or affected by the appeal during the pendency

8   of that appeal.  And LM cites to United States versus Pitner,

9   City of Los Angeles Harbor Division versus Santa Monica

10  BayKeeper -- both Ninth Circuit cases -- and Morgan Stanley

11  versus Couch, an Eastern District of California case.

12      Looking at those cases, the Court finds that none of the

13  three cases support broad interpretation of the divestment

14  rule.  In fact, each of the cases reiterate the same narrow

15  standard that an interlocutory appeal only divests the district

16  court over the particular issues involved in that appeal.

17      LM Sports argues that the Ninth Circuit's ruling on the

18  apportionment of fault issue will directly impact the jury

19  trial.  Again, I would disagree.

20      LM Sports argues that the Ninth Circuit may well conclude

21  that no reasonable factual basis exists to support the Court's

22  apportionment of fault.  But as plaintiff has pointed out in

23  the opposition, the damages phase of this litigation isn't

24  going to relitigate comparative fault issues; the only question

25  is damages.  So how that is apportioned isn't going to be an

1   issue for the jury, it is a pure and simple damages question.

2   The verdict form will, in effect, say, please say how much

3   damages do you award Ms. Palla.

4        The apportionment issue asks what percentage of whatever

5   damage amount is awarded, if any, LM Sports is responsible for,

6   and the Court does not find that the issues are so inextricably

7   bound up with each other that the interlocutory appeal divests

8   this Court of jurisdiction.

9        It's interesting, too, the Court notes that in LM's reply

10  brief there is a slightly different argument that's made.  It

11  seems to me that LM Sports changes course and now argues that

12  the Court should stay the current proceedings until resolution

13  of the appeal because the Court is -- or would be unable to

14  enter final judgment.

15       I'm not certain of that.  And I don't have to decide that

16  at this point.  That, obviously, is an issue that will be

17  briefed for another day.  But I, again, don't find that to be a

18  basis in terms of arguing that I am divested of the ability to

19  hear the damages phase because I can't enter final judgment.

20  Again, I don't think that's ripe for review at this point.

21  And, again, it's a completely separate question from whether I

22  should stay the trial on damages.

23       I'm not sure, Mr. Dreyer, I didn't get the -- you didn't

24  really get a chance to respond to that argument, but I would

25  assume that you don't necessarily agree that I would not be

1    able to enter final judgment.

2              MR. DREYER:  Correct, Your Honor.

3              THE COURT:  Okay.  So I'm not going to spend a lot of

4    time on that argument.  I, again, don't believe that I am

5    divested of the ability to hear the damages phase.

6         So then the stay issue turns on should I exercise my

7    discretion in granting the stay requested by LM Sports here.

8    And there are four factors.  Both sides seem to agree that the

9    cases make clear that there are four factors that the Court

10   needs to balance in determining whether the stay is

11   appropriate:

12        Whether, in this case, LM Sports has made a strong showing

13   that it is likely to succeed on the merits with respect to the

14   appeal.

15        Whether LM Sports would be irreparably injured absent a

16   grant of the stay by the Court.

17        Whether issuance of the stay will substantially injure the

18   other party's interest in the proceeding; in this case,

19   Ms. Palla.

20        And where the public interest lies.

21        The factors are reviewed on a sliding scale according to

22   the cases.  The moving party need not make a showing on each

23   factor in equal degree.  But the moving party, in this case LM

24   Sports, must make a certain threshold showing on each of the

25   four factors.  And the first two factors are the most critical.

1    Again, I don't want to spend a lot of time on the

2    "likelihood of success on the merits" issue.  LM Sports has

3    raised at least six legal issues that they're going to have or

4    will raise on the appeal.  I, in general, agree with

5    plaintiff's opposition that I think LM Sports has misstated,

6    oversimplified, or over-generalized a lot of these issues.  Two

7    in particular stand out:

8    There is an argument the Court failed to consider LM

9    Sports' assumption of risk defense.  Absolutely not true.  I

10   can point you to the findings of fact and conclusions of law,

11   the specific pages where that argument is taken up.

12   And then the other one that -- just have to raise it

13   because it drives me nuts is the negligent entrustment

14   argument.

15   We went over that a number of times at the first trial.  I

16   actually pulled out a transcript.  At the end of the trial,

17   before we concluded, I had a colloquy with Mr. Dreyer:

18   I said to him, Your brief talks somewhat about this

19   possibly being a negligent entrustment case.  I do not see this

20   as a negligent entrustment case and I would suggest to the

21   parties that we shouldn't go down that path.

22   Mr. Dreyer responded, We're not making that claim, Your

23   Honor.

24   The Court answered, Right.  And I know you raised it in

25   your brief and so I just wanted to make the point you do not

1    have to address that.  It's a -- as I see the case, it's a

2    failure to warn -- in part, failure to warn of dangerous

3    conditions.

4         And under the Restatement, second section, 388 that states

5    that, One who supplies directly or through a third person --

6    and it goes on.

7         Also, in the plaintiff's response to defendant's proposed

8    findings of fact, the plaintiff writes, The marina defendants

9    again turn to their favorite and classic, quote, straw-man,

10   closed quote, argument where they have erected a negligent

11   entrustment theory for them to knock down.  Plaintiff has not

12   made a negligent entrustment claim and plaintiff's counsel

13   confirmed this during closing arguments.  Indeed, the Court

14   advised that it does not see this as a negligent entrustment

15   case and suggested to the parties "that we shouldn't go down

16   that path."  The Court further made the point that the parties

17   need not address it in their findings of fact and conclusions

18   of law.  Marina defendants have argued it nonetheless.  Out of

19   an abundance of caution, plaintiff again asserts that she is

20   not making a negligent entrustment claim.  She has never

21   asserted that the marina defendants should not have rented her

22   group the boat.  Instead, she has consistently argued that if

23   the marina defendants were going to rent this 1997 Four Winns

24   with dual counter-rotating propellers less than 18 inches from

25   the swim ladder with outdated warning labels, then they needed

1    to have a system in place that provided adequate warnings about

2    the foreseeable dangers of which the

3    marina defendants were aware that could maim or kill their

4    customers.  That is negligence, not negligent entrustment.

5        So, again, I'm not going to try to predict how the Ninth

6    Circuit will rule.  I'll come back to this "likely success on

7    the merits" argument because I think there is, possibly, one

8    issue that raises a serious legal question, and I'll get back

9    to it in a second.

10        But I want to move to the irreparable injury argument,

11   Ms. Schultz.  I'm not sure I understand one part of your

12   argument.  You argue that your client is likely to be

13   irreparably injured if I allow the damage phase to proceed

14   because trial would further diminish the amount of insurance

15   coverage available to defend itself from the lawsuits and pay

16   Ms. Palla's damages, that proceeding to trial would be

17   inefficient and would deprive LM Sports of the benefits of

18   bifurcation/Limitation of Liability Act, then the third one is

19   LM Sports needs guidance from the Ninth Circuit on the

20   propriety of its business practices before proceeding to the

21   damages phase.

22        It's that third one I don't understand, and how it links up

23   to your client being irreparably injured.  So can you enlighten

24   me?

25               MS. SCHULTZ:  Your Honor, I -- with respect to that

KIMBERLY BENNETT, OFFICIAL COURT REPORTER, USDC -- (916) 442-8420

1    particular issue, it should -- it's -- essentially, that's not

2    the basis for our irreparable injury.

3              THE COURT:  Okay.

4              MS. SCHULTZ:  Because it doesn't -- the Court is

5    not -- because the appellate court is not divested of the Ninth

6    Circuit decision.

7         That being said, of course, the irreparable harm that will

8    happen for LM Sports -- I take it Your Honor understands the

9    point about the declining limits insurance coverage?

10             THE COURT:  I understand, but I'm still wondering how

11   that makes it irreparable.

12             MS. SCHULTZ:  Well, because as the -- right now we

13   have appeal dates before the Ninth Circuit that are

14   literally -- I think the brief is due the Friday before the

15   trial actually starts.  They will be basically expending every

16   available resource in tandem, and drastically limiting the

17   amount of available insurance available to satisfy any judgment

18   that Ms. Palla may eventually get.

19        So that is the -- the case which we cited back in January,

20   whenever we were dealing with the Limitation Act, and we

21   actually included it in here as well, In re Complaint of

22   Paradise Holdings, specifically talks about how vessel owners

23   are supposed to be able to have the benefits of their

24   insurance, and that is one of the guiding principles with

25   respect to the Limitation Act as well.

1        So --

2              THE COURT:  But that sounds like that is going to

3    make things difficult.  That doesn't sound, to me, like that

4    makes things irreparably harmful, that your client would be

5    irreparably injured, and that's the standard.  Neither side

6    cited any cases in which there were similar facts and the court

7    did exercise its discretion to grant a stay.  But it's that

8    irreparable word that is, obviously, the sticking point for me.

9              MS. SCHULTZ:  So, Your Honor, going to the same

10   point, the City of Fort Madison -- yeah, City of Fort Madison

11   case actually talks about how, historically, admiralty cases

12   were bifurcated, and that 1292(a)(3) was specifically enacted,

13   and I'm using the quote, because basically going forward with

14   the damages trial in view of the statutory protections that are

15   given to vessel owners by the Limitation Act has, and I quote,

16   drastic and irreparable consequences.

17      I submit to the Court that the reason that you haven't seen

18   cases that are directly on point is because every court to --

19   every circuit court to have addressed the issue recognizes what

20   the precise purpose of 1292(a)(3) is and so very seldom does it

21   come up.  I asked a number of maritime practitioners that I've

22   worked with over the years --

23             MR. DREYER:  I'd object to that argument, Your Honor,

24   what she's done and who she's talked to.  It's not reliable.

25             MS. SCHULTZ:  Let --

1    THE COURT:  It's oral argument.  She can argue what

2  she wants.  Whether I think it's reliable or not is why I'm

3  sitting here.

4    But go ahead, make your argument.

5    MS. SCHULTZ:  Practically speaking, Your Honor, in

6  almost 20 years of practice in this particular instance I

7  haven't seen people -- I haven't seen this particular issue

8  even raised because the parties basically go straight to appeal

9  on 1292(a)(3), and for the same reasons that Your Honor

10  bifurcated the trial with respect to expediency, and

11  efficiency, and the like are at play.

12    I'll also remind the Court that the parties specifically

13  agreed that Your Honor would decide the allocation of fault

14  issue.  And while I take Your Honor's not being sure exactly

15  what happened with the judgment, practically speaking, what --

16  Ms. Palla's argument is that she wants to have everything

17  decided now.  But, practically speaking, I don't think Your

18  Honor can actually enter a final judgment that anything --

19  anybody -- that she could take anywhere as to LM Sports and do

20  anything with.

21    And so if any aspect of our appeal is successful, then Your

22  Honor has spent the jury's time for, you know, two weeks, you

23  know, going through all of this for a judgment that is -- that

24  can't be enforced.

25    THE COURT:  Let's turn that around.  What if you're

1    not successful on appeal?  So now I -- and I'm not -- you

2    probably have had appeals in the Ninth Circuit, they're not

3    going to move quickly despite what you may want and Ms. Palla

4    may want.  In my experience over 20 years, the fastest appeal

5    that I've seen was on a high-profile case and that still took

6    13 months for them to get their decision out.  I've had appeals

7    that have taken three years to get a decision out.  And, look,

8    no one knows.  They're not going to tell you, they're not going

9    to tell me, how quickly they're going to move.

10        And so at the end of all this, if your appeal is not

11   successful I've got a plaintiff who has now had to wait another

12   three years with this lawsuit -- when was the accident?  What

13   year was the accident?

14            MS. SCHULTZ:  Almost three years ago, Your Honor.

15            MR. DREYER:  So long ago, Your Honor, I can barely

16   remember.

17            MS. SCHULTZ:  Three years ago last week.

18            THE COURT:  Okay.  So now you're talking six years

19   between the time of the accident and the time when she then

20   would be able to come back for trial as opposed to holding a

21   two-week trial on a date certain.

22        Again, I don't see the trial, as much as you may try to

23   convince me, both parties, that it's going to be overly

24   complicated and lengthy.  It's a damages case.  It really

25   isn't, I don't think, going to take as long as two weeks.

1      And it seems to me -- I know you disagree with this, but it

2  seems to me to be much more efficient to have all the issues

3  resolved, especially since the trial judge may not be here in

4  three years.  You know, you're looking at him.  And I don't

5  think that's fair to the plaintiff either or to you.  I'm the

6  judge most familiar with the facts of this case.  Imagine if we

7  had -- if you had to start all over again with another judge,

8  even though it's a jury trial.  I don't want to throw that on

9  my colleagues.

10      So those are all factors, I'm being as transparent as

11  possible, that make me wonder how your client really is going

12  to be irreparably injured if they have to go through what I

13  think will be a five- or six-day trial.

14          MS. SCHULTZ:  Your Honor, as I mentioned earlier, I

15  think that Congress has made that decision for you with the

16  enactment and the purpose of 1292(a)(3).

17      But I do want the record to be clear --

18          THE COURT:  If Congress really believed that, they

19  would have said that there is an automatic stay and they

20  didn't.  Right?

21          MS. SCHULTZ:  Your Honor, actually, there -- there is

22  plenty of statutes where, actually, when you look at the

23  legislative history, they find that that's what the intent of

24  Congress -- that the intent of Congress was, even though

25  they're not always the best writers.

1     Going back, though, I want to be clear that we do not

2     concede that the four factors are actually required.  There are

3     number of reasons for that.  One reason, of which Your Honor

4     actually alluded to, is that there hasn't been a case directly

5     on point with respect to 1292(a)(3) and a stay that either of

6     the parties have located at the circuit court level.

7         Traditionally, I agree with Your Honor that that's the

8     factors that people talk about because those are the factors

9     that are generally relevant, in general, to stays.

10         THE COURT:  So you're arguing that if you -- if I

11     think you've met at least one of the factors that is sufficient

12     to grant a -- if I find that there is at least one legal issue

13     that I think raises serious questions you think that, in and of

14     itself, is enough to grant a stay?

15         MS. SCHULTZ:  Yes, Your Honor.  And I think that the

16     cases actually also indicate that you can balance all four of

17     them.  I mean, certainly the public interest factor is spending

18     jury time, effectuating the intentions of Congress, enabling

19     vessel owners to continue to assert their limitation of

20     liability rights.

21         THE COURT:  Okay.  So Mr. Dreyer, assume that I do

22     think that there is at least one legal issue that is serious,

23     it's not so clear-cut to me that your client is going to be

24     successful -- I'm not saying that you won't be successful, but

25     it does raise serious legal questions -- and that's the issue

1   of causation.  I do think in looking at the trial and the

2   findings of fact and conclusions of law that that was, and is,

3   a difficult issue.  Obviously, I don't think I was wrong but

4   that's why we have appellate courts.  And I've been told

5   differently.  I think that, at least, is the strongest

6   argument.

7       So if that's my view, and then combined with LM's

8   1292(a)(3) arguments, why shouldn't I be more cautious and

9   simply grant the stay as opposed to let this go forward?

10          MR. DREYER:  Your Honor, the standard of review and

11  your findings of fact which will be submitted to that standard

12  of review demonstrate there is ample evidence of causation.

13  You're -- not surprisingly, our view is you're right on in

14  terms of exactly what you made a determination relative to the

15  findings of fact on the issue of causation.

16      The defense has -- I want to say they've just been

17  intellectually dishonest in their motion when they go through

18  your causation argument.  It's like they weren't here and they

19  didn't hear the evidence and the testimony.

20      When you went through and found causation, as you describe

21  on pages 28 through 31, and I'm not going to read the whole

22  thing because you're the one that wrote it, it's absolutely

23  consistent with what the evidence was.  And the standard for

24  the court -- the Ninth Circuit, when you make your findings,

25  and you articulate your reasoning and the credibility of the

1    witnesses that you're relying upon, that is absolutely rock

2    solid.  They're going to accept that.  And you went through, in

3    detail, something which defense counsel has absolutely ignored.

4    They never addressed it.

5         As far as I'm concerned, Your Honor, your 36-page decision,

6    and in particular your articulation of causation, and the

7    witnesses that testified, as to what they testified, and your

8    determination of credibility is unassailable.  They can't

9    prevail.  This isn't a function of, you know, whether they

10   might, which is not the standard, they can't prevail.  If the

11   Ninth Circuit follows the case law that addresses their review

12   of your decision, your articulation of causation, where you

13   talk about Ms. Palla, and you talk about, on page 28, starting

14   at line 8, her uncontested liability, which they ignored

15   relative to who she is --

16             THE COURT:  Sorry to interrupt.

17        My question, though, is slightly different.  I mean, I

18   understand your comments, but the question is slightly

19   different.  If I view this as, again, that there is at least

20   one substantial legal issue, and then I also have the statute

21   1292(a)(3) which grants interlocutory appeals in these cases,

22   according to Ms. Schultz, obviously, for this reason, to avoid

23   reaching a damage phase if, in fact, the Court is going to get

24   reversed and/or the case is remanded back --

25             MR. DREYER:  Well --

1           THE COURT:  Again, their argument, obviously, is we

2    will have wasted and been inefficient and in fact unfair to LM

3    Sports by requiring them to go through a damage phase when we

4    didn't have to do it in the first place.

5           MR. DREYER:  Your Honor, she's arguing case law that

6    applies to the argument to bifurcate the case.  You granted

7    their motion for bifurcation.  There is no irreparable harm to

8    them.  And to answer your question, one thing is not enough.

9       The case law, Hilton, and when it talks about the four

10   factors, it has to meet all four factors in different varying

11   degrees, but it's not just they get to pick one.  It's four.

12   And they can't find any of them.

13      I -- I understand you don't want me to repeat what you've

14   written as it relates to causation.  You know it.  You did an A

15   plus job on trying the case, listening to the evidence, and

16   making the determination, so the Ninth Circuit knows who you

17   found to be credible and who not.  And when you talk about

18   Meeks' testimony, Hassett's testimony -- which they ignore --

19   and the expert testimony, your decision on causation I think is

20   unassailable.

21      You may sit there because it's an 80/20, but the reality is

22   the evidence is there.  We met our burden on causation.  No

23   question about it.

24      But irreparable harm, because that would send a green light

25   to everybody, don't ever buy full insurance, always buy

1    declining limits.  And another thing you can do to help

2    yourself if you want to get a stay in an admiralty case is have

3    your lawyer file frivolous motions, file them repeatedly, never

4    stop arguing stuff when the Court has already said don't argue

5    it.

6        If the Court will recall, when we met here for pretrial

7    hearing they submitted multiple motions, which the Court

8    chastised them for doing it and indicated they're almost to the

9    point where you could sanction them for doing it.

10       And they talk about them being an admiralty firm, they know

11   what they can and cannot say.  They argued motions they

12   shouldn't.  They continue to argue negligent entrustment.

13   They've burned their poor guy's policies by the way in which

14   they handled the case.  If that were irreparable harm, because

15   someone made that choice, then they get to control what

16   determines irreparable harm.  It's not.  He's got multiple

17   marinas.  If he decided to be not insured as much as he should

18   have, that's his choice.  That's not Ms. Palla being punished

19   for that and she would be punished.

20       Additionally, they keep complaining about the fact that we

21   gave them an opportunity to resolve this case and the carrier

22   didn't do it.  So as far as we're concerned, Mr. Hassett has

23   got unlimited insurance.  And that's a decision for another

24   day, but it's not irreparable harm.  It doesn't even come close

25   to meeting irreparable harm.

1     And the other factors -- I mean, just look at the pivot.

2     You've already mentioned it, but look at the pivot that they go

3     from their motion for stay to their reply.  They abandoned it.

4     Now they're arguing things that they never even addressed in

5     their original motion.  And they save the last item, which is

6     the first item, which clearly looks like the most important

7     item, and that is do they have a chance -- any kind of clear

8     chance of success.  They threw that at the end because they --

9     the argument in their motion for stay is pathetic as it relates

10    to that fourth category.  They don't give you anything of any

11    consequence because they know they can't.  Now they want to get

12    the Hail Mary and they want to say, Hey, Congress intended this

13    stay to apply automatically, when it doesn't.

14    So you've already addressed the discretion.  You have the

15    power.  You have the discretion.  You have the authority.

16    Ms. Palla will be absolutely punished by this.  Bad enough that

17    she suffered this injury because of what they didn't do, and

18    now they want her to wait three years to go through an appeal,

19    and the trial judge may not be there, and witnesses may forget

20    things, and witnesses may not be available.  I may not be

21    available.  Mr. Garilli is recovering from spine surgery.  We

22    don't know what's going to happen.  We need to have this case

23    tried.  They have not met their burden to warrant a stay.

24    You did a brilliant decision.  And it's not because we won

25    it, it's because we tried the case, we presented the evidence,

1    and the evidence was found by the trier of fact, which you

2    decided.

3        You gave them bifurcation in front of a trial judge on an

4    admiralty case.  There is no chance this case is going to be

5    overturned.  The case law that deals with that on the standard

6    that applies in admiralty cases where a judge decides, it isn't

7    going to happen on the state of the facts of this case and your

8    findings of fact.

9                THE COURT:  Final word.

10               MS. SCHULTZ:  Your Honor, a couple of things, if I

11   can, on Your Honor's initial comments.

12       I don't want the Court to think that we were suggesting

13   that Your Honor didn't address assumption of the risk or

14   negligent entrustment but that we just respectfully disagree

15   with the Court's submission.  I don't want the Court to think

16   that we are pretending like you forgot about them.  I apologize

17   if that was confusing.

18       I heard Mr. Dreyer say a lot of things here, but what I

19   didn't hear Mr. Dreyer say is that he has a case that says that

20   all of these things are required on a 1292(a)(3) appeal.  And,

21   you know, there is this irreparable -- this claim that

22   Ms. Palla has to have this now.  As Your Honor knows, this is

23   only damages, and you don't think that it's going to be a very

24   complicated case, as Your Honor said.  Since limit liability

25   was already determined, if Your Honor is not the next trial

1   judge later down the line, Ms. Palla is going to be well aware

2   of what her injuries are, almost all the people that are

3   testifying are experts, this is not a diminishing memories type

4   of case like we may have in, for example, liability cases.  I

5   mean, the star witness is probably going to be Ms. Palla

6   herself who can aptly testify as to her damages.

7        The other -- the cases that he talks with Hilton, as well,

8   the Leiva case or Leiva-Perez --

9            THE COURT:  Leiva-Perez v. Holder.

10            MS. SCHULTZ:  Yes.  Yes.  That case does a really

11   good job of at least talking about if you do apply the factors,

12   the balancing, and there isn't an all-or-nothing I think that

13   the case makes tremendously clear.

14        That case also makes clear that they don't expect a brief

15   on the merits to any great extent at the motion to stay stage.

16   That would be unrealistic for obvious reasons.

17        I would submit to the Court that if the Court is inclined

18   to deny the motion -- which I hope that it would not be -- that

19   we did propose a middle ground to which plaintiff has not

20   addressed, and that's that we stay this case for 60 days so

21   that we can pursue the appeal -- the request before the Ninth

22   Circuit.  And, you know, that would be a middle ground, I

23   think, should Your Honor decide to decline our request for the

24   stay.  But I think it will come as no surprise to Mr. Dreyer

25   that we will have to ask the Ninth Circuit for that relief if

1    necessary.

2                    THE COURT:  Okay.

3                    MR. DREYER:  Well, may I respond, Your Honor?

4                    THE COURT:  Go ahead.  You probably should save your

5    argument for the Ninth Circuit, but...

6                    MR. DREYER:  Well, I will make the same argument in

7    the Ninth Circuit.

8        60 days doesn't make any difference on a case like this

9    with that court's calendar, number one.

10       Number two, anything can also happen to Ms. Palla.  She has

11   a right to get this case to trial.  And they have not met their

12   burden in this, Your Honor.  It's apparent.  They can't make

13   it.

14       And the threats that they make against us all the time of

15   what they're going to file, what they're going to do, and the

16   lack of cooperation, and how they burned Mr. Hassett's policy,

17   I have no control over that.

18       So we would like to go to trial on September 23rd.  If they

19   want to waste Mr. Hassett's money that he's going to need at

20   the end of the day to pursue a frivolous stay motion with the

21   Ninth Circuit, where they're going to look at this and go, Hey,

22   you didn't meet your burden and the judge has the discretion,

23   go try your case.  And we go try the case, they're still going

24   to go do their appeal.  It's incapable for them to accept

25   responsibility for what they know.

1                    THE COURT:  Okay.

2                    MS. SCHULTZ:  Your Honor, I just -- the personal

3     attacks from Mr. Dreyer on counsel I hope will not be

4     considered with respect to the Court's rulings.  And, of

5     course, we submit they are unfounded.

6                    THE COURT:  Okay.  All right.  Matter being submitted

7     to the Court, the Court is going to rule on the motion for stay

8     given the need for a decision today.

9          As I indicated and as we discussed, the Leiva-Perez versus

10    Holder case, Ninth Circuit case in 2011, talks about

11    discretionary stays, and that a stay pending appeal, again, is

12    not a matter of right but it is an exercise of judicial

13    discretion.  Citing also Nken, N-K-E-N, versus Holder, Supreme

14    Court case.  In that case the Supreme Court distilled the four

15    factors that we have been talking about for lower courts to

16    balance when determining whether issuing a stay under these

17    circumstances is appropriate.

18         The first is, of course, the likelihood of success on the

19    merits.  The party requesting a stay of a district court

20    proceeding pending appeal must make a strong showing that it is

21    likely to succeed on the merits.  Applicants need not

22    demonstrate that it is more likely than not that they win on

23    the merits, but more than a mere possibility of relief is

24    required.

25         With these considerations in mind, the Ninth Circuit has

1    allowed parties to satisfy this prong by showing either a

2    probability of success on the merits or that serious legal

3    questions are raised.

4        As I indicated, in the briefs LM Sports has raised at least

5    six issues that they believe there is a likelihood of success

6    on the merits.  I'm not going to go through each one, as I

7    indicated.  There, really, is only one factor, that I've

8    already mentioned, that I think presents LM's strongest

9    argument, and that is the proximate cause finding issue and the

10   causation issue, which the Ninth Circuit will review on this

11   appeal.  While that, again -- that one issue tends to favor LM

12   Sports, there are other factors that the Court needs to

13   consider in deciding whether to grant this stay.

14       The second and most important factor is whether there will

15   be irreparable injury to the moving party.

16       In this case, LM Sports is required to show that absent a

17   stay it may suffer irreparable injury.  It must show more than

18   some possibility of irreparable injury.  And the Ninth Circuit

19   has required that the moving party show that irreparable injury

20   is the more probable or likely outcome.  And, again, that's

21   from the Leiva-Perez versus Holder case.

22       Palla has argued that LM Sports' insurance argument is

23   disingenuous.  Palla has also argued that LM Sports' claim of

24   inefficiency should not persuade this Court.  Palla has argued,

25   assuming that Palla prevails on appeal, that proceeding with

1   the trial, then having the Ninth Circuit consolidate both the

2   interlocutory appeal with the inevitable appeal of the damage

3   result, would be, in fact, the most efficient approach.

4       Again, that makes sense to the Court.  That is a path that

5   LM Sports could take under this situation.  If, in fact, the

6   Court denies the stay request, LM Sports could also then ask

7   the Ninth Circuit to delay or continue the briefing on the

8   interlocutory appeal until the outcome of the damage phase.

9       But, really, the question is whether incurring costs of the

10  damage phase trial, that later proves -- if, in fact, LM Sports

11  is successful on appeal, that would prove to be unnecessary

12  amounts to irreparable arm.

13      As the Court noted, neither party has cited a case that

14  squarely answers the question.  LM Sports has provided Ninth

15  Circuit authority for the proposition that 28 USC

16  Section 1292(a)(3) does allow interlocutory appeals in

17  admiralty cases so appellate courts can rule on the question of

18  liability before a lower court conducts a lengthy damages

19  trial.  Again, citing the Southwest Marine, Inc. versus Danzig

20  case, a Ninth Circuit case from 2000.  But just because this

21  Court could wait for the Ninth Circuit to definitively rule on

22  the question of liability does not mean that the failure to do

23  so in this case, or in any case, will cause irreparable harm.

24      Palla does challenge the idea that LM Sports would be

25  irreparably injured absent guidance on the suitability of the

1  marina business practices before trial.  The Court does agree

2  with Palla on that.  And, again, as I indicated at the outset,

3  it really is difficult for the Court to understand exactly what

4  LM Sports was arguing with respect to that issue.

5      The Ninth Circuit's ruling on LM Sports' interlocutory

6  appeal may provide additional guidance on the propriety of the

7  marina business practices but there is no reason to believe

8  that the Ninth Circuit will issue a decision any quicker if

9  this Court stays the damages trial.

10      The Court's finding on the irreparable injury issue is

11  this:  I don't think that LM Sports has made the required

12  threshold showing that it will more probably than not be

13  irreparably harmed if I do not stay the upcoming damages trial.

14  And on this ground alone, the Court can and in fact it does

15  deny the motion to stay.

16      I will, however, address the other two factors.

17      The third factor is substantial injury to the other party.

18      I do think that Ms. Palla in this case would be

19  substantially injured by a delay.  We are already, as the

20  parties have indicated, three years from the date of the

21  accident that gave rise to this litigation.  There is no

22  promise that there will be a decision from the Ninth Circuit

23  that quickly resolves the issues that are raised.  And it is

24  more likely than not that there will be a substantial delay

25  before the Ninth Circuit issues its opinion.

1    Lengthy litigation places pressure on parties.  And while

2    Ms. Palla may be employed and have healthcare as we sit here

3    today, there is no guarantee that that will continue.

4    There is, obviously, the argument of diminishing memories.

5    That is not a substantial factor here, as Ms. Schultz has

6    argued, given that the damage phase will deal mostly with

7    expert witnesses.  But I do believe that there would be both

8    unnecessary and unfair damage to Ms. Palla if I allowed this

9    stay.

10    And, finally, the public interest issue is really not a

11    substantial issue or one that persuades the Court one way or

12    the other in this issue -- in this motion.

13    I think both sides made persuasive arguments and there

14    really isn't one party or the other that I think convinced the

15    Court that the public interest factor is really one that should

16    lead the Court either to deny or grant the stay.

17    For those reasons, and primarily the irreparable injury

18    factor, and the lack of the threshold showing, the Court does

19    deny LM Sports' motion to stay.

20    LM Sports has made a further request that the Court stay

21    its decision today for another 60 days.  I'm going to deny that

22    request as well.  That just seems, to me, to be even more

23    inefficient.

24    I'm going to confirm the jury trial which is scheduled to

25    begin on Monday, September 23, 2019.  I believe -- did I

1    schedule a pretrial conference?

2            MR. DREYER:  You did, Your Honor.  You continued it

3    recently to August 23rd.  So counsel and I will work on the

4    pretrial.

5            THE COURT:  Okay.  I'll see you all on August 23rd.

6            MR. DREYER:  Thank you, Your Honor.

7            THE COURT:  Whatever time we set.

8            MS. SCHULTZ:  Thank you, Your Honor.

9            THE COURT:  All right.  Thank you.

10               (Proceedings adjourned, 2:14 p.m.)

11                       ---oOo---

12   I certify that the foregoing is a correct transcript from the

13   record of proceedings in the above-entitled matter.

14

15                       /s/ Kimberly M. Bennett
                         KIMBERLY M. BENNETT
16                       CSR No. 8953, RPR, CRR, RMR

17

18

19

20

21

22

23

24

25